**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SSDD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-258 CAS |
| | ) | |
| UNDERWRITERS AT LLOYD'S, LONDON, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the motion of defendants Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559, sued as "Underwriters at Lloyd's London" (collectively "Underwriters"), to stay this action pending the resolution of Underwriters' claim against plaintiff SSDD, LLC ("SSDD"), as set forth in their Amended Complaint for Declaratory Judgment filed in Case No. 4:13-CV-193 CAS (E.D. Mo.).  SSDD opposes the motion and it is fully briefed.  For the following reasons, the Court will grant the motion and stay this action.

**Background**

SSDD obtained a commercial property insurance policy from Underwriters effective April 8, 2012 through April 3, 2013 (the "Policy"), covering commercial property located at 4518 Blair in St. Louis, Missouri (the "Property").  SSDD submitted three claims to Underwriters for theft/vandalism, fire, and hail damage (collectively, the "Claims"), that occurred during the effective date of the Policy and are three separate occurrences thereunder.

SSDD submitted the Claims to Underwriters and its representative engaged in an Examination Under Oath conducted by Underwriters' counsel.  The parties retained experts and adjusters to investigate the Claims.  SSDD submitted its estimates to Underwriters and has cooperated fully with them.  Underwriters made an offer to SSDD to settle the Claims, but the

Claims have not been resolved.  Pursuant to the Policy, either party is entitled to request an appraisal.

On January 29, 2013, SSDD filed a Petition in state court to compel Underwriters to participate in an appraisal, name an appraiser and complete the appraisal process pursuant to the Policy's Building and Personal Property Coverage Form, Section E, Paragraph 2, to determine all appraisable issues, including but not limited to the amount of loss or damage caused by the three separate claims for vandalism, fire and hail loss.  Underwriters removed the Petition to this Court on February 11, 2013 based on diversity of citizenship jurisdiction.

A few minutes after SSDD's Petition was filed in state court, Underwriters filed a declaratory judgment action in this Court seeking rescission of the Policy on the basis of material misrepresentations and/or omissions in the application, and the case was randomly assigned to the undersigned.  See Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 v. SSDD, LLC, No. 4:12-CV-193 CAS (the "Declaratory Judgment Action").  In the alternative, Underwriters' Declaratory Judgment Action seeks declarations that the Policy is void and unenforceable under Commercial Property Condition A based on certain omissions and misrepresentations of material facts, and that Exclusion 2(m) bars coverage for all loss or damage after May 22, 2012.  Underwriters' motion seeks to stay this action to compel an appraisal pending resolution of the issues raised in the Declaratory Judgment Action.

**The Parties' Arguments**

Underwriters assert in their motion to stay that the interest of judicial economy is best served by staying this action until the rescission and coverage issues raised by the Declaratory Judgment Action are resolved, because that action raises core issues that address the viability of SSDD's Claims.  Underwriters assert that if the Claims are not covered in whole or in part, undertaking an

appraisal at this time will be a futile act.  Underwriters also state that if the appraisal action is stayed, the parties will not be required to incur expense on an appraisal with respect to issues that may be mooted by the Declaratory Judgment Action.

Underwriters state that stays involve matters of judicial administration within a court's inherent powers to regulate actions pending before it, and that courts have considered the following factors in determining whether a stay is warranted: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated."  Emerson v. Lincoln Elec. Holdings, Inc., 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009) (quoted case omitted).  Underwriters assert that potential prejudice to SSDD is minimal here, and that resolution of the coverage issues will benefit both parties because they will learn whether the Claims are covered in whole, in part, or not at all.  Then, if the Claims are covered in whole or in part, the parties may proceed to the appraisal process knowing of any conditions or limitations that may be placed on the appraisal.  Underwriters assert that if the appraisal is permitted to proceed before the coverage issues are resolved, there is clearly evident potential for duplicative motion practice and appraisals.  As a result, Underwriters contend that judicial economy and prejudice to them weigh heavily in favor of a stay, citing Emerson v. Lincoln Elec. Holdings, Inc., 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009).

Finally, Underwriters assert that an appraisal will not resolve any coverage issues between the parties, but contend the Declaratory Judgment Action will resolve all of the issues.  Underwriters assert that under Missouri law, appraisals are not appropriate in a dispute for resolving questions of coverage, citing D.R. Sherry Construction, Ltd. v. American Family Mutual Insurance Co., 316 S.W.3d 899, 902 (Mo. 2010) (en banc), and that the primary disagreement between the parties here

3

is whether any coverage is provided by the Policy for the loss, due to SSDD's misrepresentations and violations of Policy terms and conditions.

SSDD opposes a stay of this action, arguing that this case involves a dispute over the proper amount to be paid by Underwriters to it because of insured property damage to the Property.  SSDD describes the adjustment and claims process the parties engaged in, beginning in June 2012, that culminated in Underwriters making a settlement offer on December 28, 2012 that Underwriters described as presenting 100% of the adjusted value of the Claims with no discount because of any alleged lack of coverage.  SSDD states that it refused the offer because it disagreed that the amount offered was sufficient or reasonable based on the scope of damage to the Property and the estimated cost of repair, and because Underwriters refused to provide it with Underwriters' adjusters' estimates of the cost of repair or its consultants' reports.

SSDD states that during January 2013, it informed Underwriters on multiple occasions that it would accept the settlement offer only if Underwriters would agree that it was only a partial payment and that both parties would continue adjusting the Claims, but Underwriters refused to engage in any further adjustment.  On January 29, 2013, SSDD received correspondence from Underwriters counsel purporting to deny coverage for the first time and refusing to engage in an appraisal, which SSDD asserts is its contractual right as well as a condition precedent to initiating any litigation under the Policy.

SSDD states that while it is well established the power to stay proceedings is incidental to the courts' power to control the disposition of cases before it, the party seeking a stay must make out a clear case of hardship or inequity in being required to go forward if there is a fair possibility the stay will cause damage to someone else, citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936).  SSDD contends that Underwriters fails to show that allowing the appraisal to

4

proceed will place a hardship on it, and incorrectly argues that the Declaratory Judgment Action will benefit both parties.

SSDD contends that the real issue between the parties is the amount Underwriters owes, not whether coverage exists.  SSDD argues that if coverage were the real issue, Underwriters would not have engaged in an extensive adjusting process and then offered SSDD what it calculated to be 100% of the value of the Claims.  SSDD asserts that Underwriters' adjusting the Claims and making a conditional payment offer is a tacit admission of at least some coverage for the Claims.  SSDD asserts that in a similar case, Underwriters' declaratory judgment action against an insured was stayed and it was ordered to engage in the appraisal process, citing Underwriters at Lloyd's of London v. Tarantino Properties, Inc. 2012 WL 3835385 (W.D. Mo. Sept. 4, 2012) ("Tarantino").

SSDD asserts that it has the contractual right to an appraisal under the Policy's appraisal provision,[1] and that Underwriters' Declaratory Judgment Action is premature and must be dismissed because the Policy contains a provision requiring the appraisal to occur before any litigation may

_____

[1]The Policy's appraisal provision states in pertinent part:

If we [Underwriters] and you [SSDD] disagree on the value of the property or the amount of the loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

a.  Pay its chosen appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we [Underwriters] will still retain our right to deny the claim.

Complaint, Ex. F, Policy, Building and Personal Property Coverage Form, ¶ E.2.

be instituted under the Policy.  SSDD also contends that because nothing would prohibit Underwriters from contesting coverage of items included within the appraisal award, it has failed to demonstrate that it will be prejudiced in any way by proceeding with the appraisal.

Underwriters reply that SSDD attempts to put the cart before the horse by seeking to invoke the Policy's appraisal provision before the Court has determined if the Policy is valid and if its other terms and conditions have been satisfied.  Underwriters further reply that the Policy's "no legal action" provision prohibits an <u>insured</u> from bringing suit against them until there has been "full compliance with all the terms of the Coverage Part," but does not provide that no legal action may be brought at all.  Underwriters distinguish <u>Tarantino</u> on the basis that Underwriters there did not argue that the policy should be rescinded in its entirety because of the insured's misrepresentations in the application and, unlike this case, admitted there was a covered loss.

Underwriters assert that it will be a hardship to both parties to incur the cost of an appraisal prior to a determination of coverage because the process will most likely end with Underwriters invoking their right to deny the claim to allow resolution of the coverage issues.

**Discussion**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  <u>Landis</u>, 299 U.S. at 254.  In determining whether to stay an action, a court must exercise its judgment to "weigh competing interests and maintain an even balance."  <u>Id.</u>  The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."  <u>Id.</u> at 255.  The Court should also consider the interest of judicial economy.  <u>Asarco LLC v. NL Industries, Inc.</u>, 2013 WL 943614, at *3 (E.D. Mo. Mar. 11, 2013) (cited cases omitted).

The Court determined in the related Declaratory Judgment Action that the dispute between the parties is primarily one concerning coverage, as opposed to the amount of loss, and therefore enforcement of the appraisal provision is not appropriate in the parties' dispute.[2]  The Court also determined in the related case that the "no legal action" provision of the Policy does not preclude Underwriters from initiating litigation, and that compliance with the appraisal provision was not a condition precedent to Underwriters' filing of the Declaratory Judgment Action.  The Court therefore does not afford any weight to SSDD's arguments to the contrary in resolving the motion to stay.

Underwriters argue that a stay of the appraisal action is warranted because the issue of whether coverage exists under the Policy for the Claims necessarily should be decided before any appraisal occurs.  The Court agrees.  This makes sense both as a logical and a practical proposition. Logically, the first question to resolve is whether the Policy should be rescinded or is void because of material misrepresentations or omissions in the application.  If there is no coverage, the Claims will necessarily be denied.  As a practical matter, if there is no coverage under the Policy because it is subject to rescission or is void, all time and money expended on an appraisal would be wasted for both parties.  If the Policy is not rescinded or void but certain aspects of the Claims are excluded because of Policy conditions or exclusions, then the scope of an appraisal would be limited.  If an appraisal were to occur prior to a determination of the scope of coverage, it is possible another appraisal might need to occur or, at minimum, the prior appraisal might need to be modified.  For

---

[2]The Court incorporates by this reference its Memorandum and Order of May 31, 2013, issued in <u>Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 v. SSDD, LLC</u>, No. 4:12-CV-193 CAS (E.D. Mo.).

these reasons, the Court finds that it would be a financial hardship for both parties to engage in the appraisal process before coverage issues are resolved.

The Court also finds that SSDD will not suffer any damage if its Petition for Appraisal is stayed.  Indeed, SSDD has not argued that it will suffer damage.  Even if the appraisal were to go forward, Underwriters retains the contractual right to deny the Claims after the appraisal process is complete and would undoubtedly do so for the reasons articulated in its Declaratory Judgment action.  Therefore, SSDD has nothing to gain from the appraisal at this point.  Because there would be no damage accruing to SSDD from a stay of this case, the hardship Underwriters must show to warrant a stay is lessened.  See Landis, 299 U.S. at 254.

Finally, the Court finds it would serve the interests of judicial economy if the Petition for Appraisal is stayed pending the resolution of coverage issues in the Declaratory Judgment Action. A stay of this action would permit the Court to focus its attention on the primary coverage issues without having to expend judicial resources to address possibly duplicative motions or discovery issues in the appraisal action.

Having weighed the competing interests in this matter, the Court finds that Underwriters' motion to stay this action pending resolution of the related Declaratory Judgment Action should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Underwriters' motion to stay this action is **GRANTED**.  [Doc. 9]

s      **IT IS FURTHER ORDERED** that this matter is **STAYED** pending further order of the

Court.


_____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  _3rd_  day of June, 2013.